Case number 20-5409 Allen Rupp v. The Courier-Journal Argument not to exceed 15 minutes per side Mr. Cox you may proceed for the appellant May it please the court counsel my name is Don Cox and I represent Allen Rupp I'd like to reserve five minutes if I may all right This case is as is clear is about the trademark derby plot pack from 50 years ago it's therefore non-contestable it's been litigated dozens of times mostly in the sixth circuit including one case in front of Judge Siler many years ago The standard of review and the standard of making the initial decision are the important issues here because this was decided on a motion to dismiss obviously the review is de novo and the Hensley case which is very important here says you virtually never grant a motion to dismiss in a trademark case and of course the main reason for that is that you have this complicated eight-part test which is really very heavily fact-weighted about likelihood of confusion before you get to that you must prove a trademark ownership that's undisputed you must prove whether the words are the same or similar that's also undisputed here and so that leads us to the eight-part test the very first part of that test is the strength of the mark and the mark here as I said before had been litigated many times but this was not just against anybody the very first case a case which went up to the sixth circuit and I argued again many years ago I was against Bon Appetit we've had cases against Nestle and Judge Siler's case was against PBS none of those are entities that would be inclined to roll over in this particular case we attached three different sets of what we said were misuses of the mark the first had to do with a restaurant called the Captain's Quarters in Louisville that was selling a Derby pie the second had to do with a Derby pie denominated pastry a macaroon and then the third was a listing of advertisements on the Courier Journal website which was never dealt with by the court at all I think it's important one thing is important to recognize is we are primarily a wholesaler in other words we sell not to the ultimate consumer but to restaurants to Kroger's and to places like that so when that's important because we have to consider who is consuming the mark as it were now in the opinion of the district court there were several cases that were relied upon there was the Sazerac case which involved a distillery and the use of a distillery name and the distillery was closed down for a long time and then it opened back up and the name of the distillery was really a geographic name and so we were talking about a geographic name in the Sazerac case the Oklahoma case was also about a geographic place a racetrack and finally the Cassie case in involving Big D or Detroit also involved geographic names so the right ask a question what is the gist of the most egregious part of this is it just saying there's a pie that comes out at Derby time or is it the full name of the Derby pie and set out just the way that you have the trademark well I think it the question is likelihood of confusion so it doesn't have to be exactly the same there are hundreds of cases which say the test is is the name being used the same or similar and here we had the same name Derby pie the captain's quarters we had Derby pie it was a macaroon but it was still Derby pie and so even if you're just close close is good enough and trademarks I guess is the way so the statement that this pie was developed sometime near the Derby is that a violation out in the career journal close to the Derby the race that you know was the most biggest thing in Kentucky generally and just talking about a pie during the Derby time is that a violation I think it'd be you'd have to see what it what the context of it was if the context was that it recognition that Kern's kitchen had invented this pie during Derby time then that would be tying the pie into us but using Derby pie whether it's around Derby time or any other time of the year is protected by the Lanham Act and and that's why we have brought this action and and not all of the the very first of the three issues that we are raising three instances were raising was around Derby time the second one was a month or so later and the others were in January having nothing to do with the Derby so uh the reason I say that Sazerac, Oaklawn, Tassa and Hensley the first three involve geographic marks and Hensley involves a personal name and under section 1115b4 all of those are more or less protected so you have a much more stringent situation in Sazerac, Oaklawn, Tassa and Hensley when you're trying to trademark something that's either geographic or a person's name the uh the other issue that we have main issue we have with the the uh said that well this product has different ingredients in it than the regular Derby pie so the one was said to have whiskey or alcohol in it and Derby pie doesn't well that's not the the test at all that's the patent test and we're talking about trademarks the ingredients of the product as the CAE versus Clean Air case made very clear the ingredients of the product are not crucial what's crucial is likelihood uh it's likelihood of confusion the other product the macaroon uh product macaroon Derby pie uh has different ingredients in it but again it's using our name and the question is a fact question and we're up here on a motion to dismiss so if you went to trial you're going to prove that there was a confusion among people in Louisville and Kentucky is this is the same thing yeah among consumers yes unlike it's not there was confusion the test is likely the confusion well if they use the statement Derby macaroon pie is that a violation that trademark infringement I believe it is but believe that's a fact question and and and as the sixth circuit ruled the first time we were up many many years ago these kinds of issues generally resolve themselves around surveys so you try to figure out uh how many people would would be confused about source I see my time has expired all right we'll hear from opposing counsel good morning your honors Michael Abadie on behalf of the Courier Journal the district court correctly dismissed plaintiff's trademark claims in this lawsuit in reality this case began as a trademark dilution claim where the plaintiff was alleging that confusion of this sort he was just describing somehow diluted the brand and required the Courier Journal to conduct corrective advertising to clear up confusion but as we pointed to dismiss Congress expressly forbid bringing a trademark dilution claim against the newspaper that's in section 1125 c 3b the plain on the face of the law at the time this suit was filed what remains after plaintiffs withdrew that claim is an infringement claim that alleges the Courier Journal which is a newspaper somehow infringed plaintiff's mark by publishing news stories around the time of the Kentucky Derby concerning pastries now the Courier Journal does not produce pastries it does not sell a competing product the one that plaintiff produces and there is no conceivable basis for even finding an infringement claim in this case the district court correctly held that under the law of this circuit a threshold test must be addressed before going to the eight part likelihood of confusion test that opposing counsel has discussed this morning and that threshold test in this circuit is called the trademark use test and I'll explain why we think the court correctly applied that but I will note that even if this court were to disagree for some reason with the threshold application of trademark use the first amendment also bars this claim the sixth circuit has recognized the first amendment defense in trademark infringement claims and here we're talking about news stories which are plainly entitled to first amendment protection so even if there was no ground to affirm a trademark use this court should affirm on the alternative ground of trademark use a pleading stage dismissal excuse me the alternative ground with the first amendment I'll briefly begin by touching on the trademark use test which we think was appropriately applied here in this circuit the test is that if the defendants are only using a trademark in a non-trademark way that is in a way that does not identify the source of a product then trademark infringement and false designation of origin laws do not apply this is a gate that you got to get through before you can even state a claim under the laminate and in the casa case that we've relied on this court held that where uh banners advertising using a phrase that had been otherwise trademarked welcome to the d where they did not advertise any goods or services where they did not identify the plaintiff as the source of any particular event or thing advertised and where they did not suggest any association between the the trademark and the thing being promoted then there was no trademark use at all that's exactly the same thing here these articles the two articles that are uh primarily in question in this appeal do not advertise any product for sale they are news stories about restaurants and bakeries in the community they do not identify kern's kitchen is the source of any of those goods they expressly disclaim that in fact they tell you who is the the source of the product pictured and they don't suggest any association whatsoever between the plaintiff in this case and the product being sold under the law of this circuit there is no trademark use and dismissals appropriate mr cox suggested this morning that the dismissal can never be made prior to the eight-part likelihood of confusion test and he relied upon the hensley and i find that interesting because in the very next sentence after the one that mr cox has quoted repeatedly in this case this court goes on to say well and typically you don't resolve such a case on a motion to dismiss when you're talking about the trademark use defense it is entirely appropriate to do so and this court has affirmed or uh or called for the um pleading stage dismissal of trademark cases not only in hensley but in the casa case in the oaklawn jockey case and um in the interactive products court case where it first established trademark use uh the court said that that could have been decided at the pleading stage so the notion that this case somehow has to wait for summary judgment for him to take discovery is just simply incorrect we think that the district court correctly applied that test here and found that uh as the court said uh quote you know a reader would not think that the defendant a newspaper produced derby council in terms of the need for discovery um are there any um contested factual issues that are not um clear or agreed upon at this juncture of the proceedings no your honor we don't think there are because again under this court's test whether whether the usage is trademark usage is a is a threshold question and if the plaintiff can't get over that and we believe he can't as the district court found then there's no other eight there are no factors to apply so if the use is not trademark use that's the end of the case but judge clay i'll note there's another reason why there's no discovery necessary here and i'll pivot briefly to our first amendment argument um there is in this circuit a first amendment defense in trademark cases and the test is that if speech is protected by the first amendment you cannot bring a trademark claim against it unless there is no relevance for the use of that protected speech in in the work or the article in question and or excuse me or there is an overt misrepresentation as to the source of the thing being depicted now here the district court declined to rely on that defense on the ground that this court presumably wouldn't apply the first amendment defense it's already recognized to newspaper story we submit respectfully that that's just wrong that the press is in the text of the first amendment there's no basis for refusing to apply an established first amendment defense to news coverage and in fact quite the opposite in in all manner of litigation raising first amendment defenses the supreme court and the circuit courts have recognized the need for prompt resolution of speed of claims so as not to chill constitutionally protected speech and that's particularly true with newspaper stories in defamation cases for example courts have have recognized you must if you can you should resolve them as early as possible to prevent the chilling of constitutionally protected speech what the plaintiff is attacking here is not competing sales by the courier journals of a product like theirs they're attacking news coverage of restaurants selling goods that they think are too close to their own they didn't sue the people that they believe are directly infringing they sued the newspaper for covering them and to judge seiler's questions earlier i think it's extremely relevant we're talking about a news story the first story published on kentucky derby day i have a question yes sir uh i do you think that uh the courier general could test drive a chevrolet and have the name chevrolet there and this is similar to that because they're saying what the restaurants do with this derby pie is that the same sort of thing yes your honor if i understand the question the accurate news reporting on the source of a good that's being reviewed or profiled pictured plainly as protected by the amendment but it's also not a trademark violation the the real core of the question is in a trademark infringement case is the defendant attempting to pass off someone else's product as its own are we trying to trade profit off of the name of some other product that we didn't develop and if there's anything like that going on here i think it is plaintiff attempting to trade off the name of the kentucky derby to your honor's questions not any instance of a dessert in the word derby is owned by the plaintiff they can't control all coverage of pies or ice cream or macaroons or whatever it is in the run-up to the kentucky derby in louisville in kentucky derby is the biggest event of the year over 100,000 people come in annually the news coverage by the courier surrounding those events is some of the most red coverage of the year from locals and visitors alike and profiles of the food scene of parties of social events are widely read throughout the community so we can't be sued for using the word derby when talking about a party that was held or some other charity event and similarly here where there's no read the articles look at them there's no reasonable suggestion that the courier journal is trying to trade off of that plaintiff's name by selling its own product it doesn't sell its own competing product it was covering community news and that is plainly protected by the first amendment let me let me ask you this if uh the word derby in relation to a um plaintiff uh uh gain or obtain by trademarking uh the word derby what um you've been explaining what's not covered but what do you and you're thinking of a theory about the case what what is it that they are protecting well your honor i will also disagree with mr cox on the notion that the trademark is unassailable uh in a prior case that came up to this court the trademark was struck down as being generic as not being a protectable name in fact there have been we're not there in this case yet we may get there but there have been instances of pies called derby pie in print across the country long before they tried to trademark their name so we don't agree that this trademark is unassailable we do agree it's been registered a long time but that that may yet be an issue in this case uh but the point here your honor is if you look at these stories but is protected isn't remotely infringed by this news coverage um the none of these stories are attempting to portray a product as one that is sold by anything that is being sold by the courier journal which is nothing is we are not talking about secondary infringement here at page nine footnote five of the opinion the district court made clear that any theory that the courier journal is liable because castings quarters or the derby city macaroon shop sold a product that may have infringed plaintiffs mark that that failed as a matter of law and plaintiff did not appeal that's not in their brief that's not on the table so even if hypothetically there were some infringement by others and we don't believe there is we can't be liable for that secondarily that claim is gone in this case it's gone like the dilution claim it's gone like the fraud claim that wasn't appealed and i have to add this mr cox referenced three sources of potential damages here there's only two the two articles the one about captains quarters and the one about the derby pie macaroon shop these advertisements as he said not addressed by the district court not referenced in the brief on appeal those are no longer part of this case but even if they were the trademark statute your honor is is quite clear at 15 usc 11 14 subsection 2b that if we're talking about an advertisement in a newspaper and that advertisement was found to be infringing you may not recover monetary damages against the newspaper for that the sole available remedy would be an injunction against future advertisements of this sort now that's not on the table because they didn't appeal that issue that's been waived but we're still not talking about a claim where at the end of the day they're going to get damaged and entirely apart from the trademark use test and entirely apart from the first amendment test that's another fatal flaw at the core of this case there are no damages here they have suffered we haven't sold a competing product to make profits that could be disgorged they haven't alleged a single person failed to buy their pie because a recipe existed of a pie from a different restaurant or because a photograph existed of a macaroon sold by another bakery in town there's there's no damage and plainly there's no right to get an injunction against a newspaper to prohibit the use of the word derby in close proximity to pie in the future that would be an unconstitutional prior restraint that would be plainly not allowed so there's no legal theory on which they can proceed and at the end of the day there's no damages that they can get in this case so we would encourage the court to uphold the trademark usage finding by the district court it was entirely correct it was appropriately done at the threshold stage under the law of the circuit but even if this court found some concern with that there's plainly a first amendment defense which this court should hold applies to newspaper coverage as well as creative works and we ask this court to affirm the judgment below thank you your honor thank you with your rebuttal uh thank you uh your honors uh let me first start uh with this idea that there is a first amendment uh right here the district court found that there wasn't uh there was no cross appeal taken on that issue mr cox does there have to be a cross appeal uh here that the district court granted uh the def your general relief by granting its motion to dismiss is a cross appeal necessary to preserve alternative basis ease for the action of the judgment i don't think think it is is it well i uh the the case of wiggins versus oakland lawn loan servicing says uh it's a sixth circuit case uh 722 bed appendix 418 when a person seeks to enlarge their rights okay but the right here is the judgment of dismissal the defendant is not trying to expand to get something in addition to the dismissal the dismissal is all they wanted this is just an alternative defense that they asserted and it's my understanding alternative defenses did not have to be cross appeal well they're they're seeking a general first amendment uh right here uh for all uses uh of of the the phrase derby pass so that's our that's our position yeah well the issue is preserved because it was raised below it's been appealed but i don't think that they it's barred because of the lack of a cross appeal that's all i i i don't i don't see the authority that you've cited as establishing an across appeal as necessary here and if if you got some better authority i guess i'd like to know what it is i don't have anything better than what's in the brief on that okay all right thank you and that case was in uh uh the brief the brief uh they cite this um welcome to the g trademark case and as we pointed out the fundamental distinction there is it's a geographic mark the court held that this was used to refer to detroit and under the statute there's a specific exception for geographic uh uh marks so i don't think uh that that uh that that argument pulls water uh kim was asked about whether or not uh a review of of a chevrolet or some kind of automobile appearing uh in uh in in the courier journal would be uh uh an infringement and uh uh i agree that there is a fair use right uh to uh uh review products i think the courier journal could have a review of a derby pie uh as long as they said it was a kerns kitchen derby pie and i think that would be appropriate but we don't have that here we have somebody else's derby pie not ours which court said well this is different because it has different ingredients and that simply doesn't matter a wit in terms of trademark the question is on a motion to dismiss can you say for sure that nobody would be confused and the answer is no there's discovery which should be taken on issue of uh of uh of a infusion uh council um just to make sure i understand uh you here it sounded as though you were stating that the article in the with respect to the article in the courier journal if the article had just added uh to the uh headline or to the uh presentation that uh this was uh uh that that they're uh talking about uh the captain's uh derby pie the captain's quarters derby just adding that one word there uh that this was captain's derby pad uh would have removed the uh just sticking in one or two words saying that this was captain's derby and old case goes away from what you were saying is that no sir no i wasn't saying that at all what i was saying was if they reviewed a kerns derby pie then that's fair use they can review our product just like they can review a catalog but when they have somebody else's product uh the captain's quarters derby pad then it then it becomes a question are they confusing that with our product and i think they are i think it's obvious that we we have a a product from captain's quarters that's not our that's why we have it uh that's why we get a trademark and even though the courier journal didn't make any money uh writing the article as council conceded we'd be entitled to an injunction and there's plenty of case law which says if your trademark is misused you're entitled to have the defendant do corrective advertising to let the public know that this was not kerns kitchen's product and it should never have been uh should never have been advertised in the way it was so corrective advertising is a damages-like uh uh form of relief that's allowed in these cases i think i see my time is expiring again all right if there are no further questions from the panel that will conclude the argument and the case is submitted